# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHELBY GEORGE** | **CIVIL ACTION** |
| **versus** | **NO. 09-5472** |
| **CAL-DIVE INTERNATIONAL, INC.** and **BLUE MARLIN SERVICES OF ACADIANA, LLC** | **SECTION: "C" (2)** |

## ORDER AND REASONS[1]

Before the Court is a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 filed by Blue Marlin Services of Acadiana, L.L.C. ("Blue Marlin") (Rec. Doc. 18). The motion is before the Court on the briefs without oral argument. Having considered the memoranda of counsel, the record, and the applicable law, the Court GRANTS the Defendant's motion for summary judgment for the following reasons.

## I. Background

The undisputed facts reveal that Defendant Blue Marlin ("Defendant") provides temporary contract labor, including catering and steward personnel to numerous companies. (Rec. Doc. 18-1 at 2). Plaintiff Shelby George ("Plaintiff") was employed with Defendant from May 2008 to September 2008. (Rec. Doc. 19 at 2). Defendant's clients are both land-based and offshore facilities, including jack-up barges and fixed platforms. (Rec. Doc. 18-1 at 2). On September 28, 2008, the date of Plaintiff's injury,

---

[1] Geoffrey M. Sweeney, a third-year student at the Loyola University of New Orleans College of Law, assisted in the preparation of this Order and Reasons.

1

he was working as a galley hand aboard the Canyon Horizon, a vessel owned by Cal-Dive International, Inc. ("Cal-Dive"). (Rec. Doc. 19 at 2). While cleaning the galley area, Plaintiff claims to have tripped over certain equipment left unattended on the floor of a hallway, thereby sustaining injuries for which, Plaintiff alleges, the Defendant should be held liable under the Jones Act and general maritime law. *Id.*

Plaintiff understood that his work assignments were, in their nature, temporary and were determined based on the needs of Defendant's clients. (Rec. Doc. 18-3 at 9). He had no expectations of permanent or long-term placement with any particular client. *Id.* From May 2008 through September 2008, Plaintiff received four work assignments. (Rec. Doc. 18-1 at 2). He was twice assigned to work for Hilcorp Energy Company on a fixed installation platform; the first time from May 8, 2008 to June 26, 2008, and the second from August 24, 2008 to August 31, 2008 for a total of thirty-three days. (Rec. Doc. 18-1 at 10). In between these assignments, Plaintiff worked from July 9, 2008 to July 20, 2008 aboard the Basic 11, a vessel owned by Basic Marine Services ("Basic"). *Id.* This assignment totaled ten days. *Id.* At no time before or after these dates did Plaintiff work aboard the Basic 11, or any other vessel owned or operated by Basic. (Rec. Doc. 24-2 at 2). Plaintiff's final assignment commenced on September 17, 2008 aboard the Canyon Horizon, a vessel owned by Cal-Dive. *Id.* This assignment ceased on September 28, 2008 as a result of Plaintiff's alleged injury. *Id.* He was aboard the Canyon Horizon for a total of twelve days. *Id.* Prior to this specific assignment on the Canyon Horizon, Plaintiff had not previously worked on that vessel, or any other vessel owned or operated by Cal-Dive. *Id.* Basic and Cal-Dive are two distinct entities and their vessels, Basic 11 and Canyon Horizon, respectively, are in no way affiliated. (Rec. Doc.

2

24-2 at 5).  Nor does Defendant Blue Marlin retain any ownership interest in or operative control over either of these vessels. *Id.* at 3.

Plaintiff worked as an employee of Defendant for a total of fifty-five days. (Rec. Doc. 24-2 at 4).  For thirty-three of those fifty-five days, he worked on a fixed platform. *Id.* This figure represents 60 percent of his total employment time with Defendant. *Id.* For ten of those days, he worked on the Basic 11. *Id.*  This figure represents 18 percent of his total employment time with Defendant. *Id.*  For twelve of those fifty-five days, he worked on the Canyon Horizon, the vessel on which Plaintiff's alleged injury occurred. (Rec. Doc. 24-2 at 4).  This figure represents 22 percent of his total employment time with Defendant. *Id.*

On August 7, 2009, Plaintiff filed a Complaint against Defendant Blue Marlin in this Court, asserting claims under the Jones Act and general maritime law, alleging negligence, the unseaworthiness of the vessel, and entitlement to maintenance and cure. (Rec. Doc. 18-1 at 2).  Defendant filed this motion for summary judgment that Plaintiff has no claim against it under the Jones Act, for unseaworthiness under general maritime law, and is not entitled to maintenance and cure because he is not a Jones Act seaman.

**II. Law and Analysis**

A. *Motion for Summary Judgment*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party "always bears the initial responsibility of informing the district

3

court of the basis for its motion." *Id.* at 323, 106 S.Ct. at 2552-53 (citing FED.R.CIV.P. 56(c)). The moving party may satisfy its summary judgment burden by showing that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See id.* at 325, 106 S.Ct. at 2554; *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries it's burden, the nonmoving party must "go beyond the pleadings and designate specific facts in the record showing there is a genuine issue for trial." *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311-12 (5th Cir. 1999) (quoting *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047-48 (5th Cir. 1996)); *see also Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The nonmoving party cannot "rest on the allegations in [the] complaint" or otherwise satisfy its burden with "unsubstantiated assertions" or conclusory allegations." *International Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991); *Lawrence*, 163 F.3d at 311-12 (quoting *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047-48 (5th Cir. 1996)).

When considering a motion for summary judgment, the court construes the evidence in a light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences from the underlying facts in that party's favor. *Hunt v. Rapides Healthcare Sys.*, L.L.C., 277 F.3d 757, 764 (5th Cir. 2001). Factual disputes are resolved in favor of the nonmoving party "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). A factual dispute will preclude a grant of summary judgment only if the nonmoving party presents evidence sufficient to permit a

reasonable trier of fact to find in it's favor. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

Summary judgment is also appropriate "against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). This is because the inability to prove an essential element renders all other facts immaterial, thus precluding the existence of any genuine issue of material fact. *Id.*

B. *Seaman Status under the Jones Act*

The central issue in this case is whether Plaintiff can maintain a claim against his employer under the Jones Act, 46 U.S.C. § 30104. The determination of Jones Act seaman status is a mixed question of law and fact. *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554, 117 S.Ct. 1535, 1540 (1997). As such, seaman status is typically a matter for a jury to decide. *Id.* Nevertheless, the Supreme Court has stated that summary judgment in this context "is mandated where the facts and the law will reasonably support only one conclusion." *Id.* (citing *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356, 111 S.Ct. 807, 818 (1991); *see also Becker v. Tidewater, Inc., et al.*, 335 F.3d 376, 386 (5th Cir. 2003).

In pertinent part, the Jones Act provides that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law . . . against the employer." 46 U.S.C. § 30104. A cause of action will not arise under the Jones Act unless the plaintiff is a "seaman." *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 346 (5th Cir. 1999). While the statute does not define the term "seaman," there is ample case law to elucidate

the contours of exactly "which maritime workers are entitled to the special protections" of this remedial statute.[2] *Chandris v. Latsis*, 515 U.S. 347, 355, 115 S.Ct. 2172, 2183 (1995); *see, e.g., Papai*, 520 U.S. at 553, 117 S.Ct. at 1540; *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368 (5th Cir. 2001); *Brown v. Trinity Catering, Inc.*, No. 06-5756, 2007 WL 4365384 (E.D.La. 2007).

In *Chandris v. Latsis*, the United States Supreme Court implemented a two-pronged test to be used when evaluating Jones Act seaman status. *See generally Chandris*, 515 U.S. 347. The essential requirements are:

> First . . . an employee's duties must contribute to the function of the vessel or to the accomplishment of it's mission; and
>
> Second . . . a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and nature.

*Chandris*, 515 U.S. at 367-70.

For the purposes of this motion, Defendant does not dispute that the plaintiff contributed to the function of the vessel on which the injury occurred. (Rec. Doc. 18-1 at 5). Thus, satisfaction of the first *Chandris* requirement is not in controversy. Plaintiff's seaman status, or a lack thereof, will turn on the second *Chandris* requirement. The

---

[2] Land-based maritime workers are not seaman and therefore have no claim for negligence under the Jones Act. *Hufnagel*, 182 F.3d at 346 (citing *Papai*, 520 U.S. 548, 117 S.Ct. 1535 (1997). A land-based maritime worker's recourse against his employer lies with the Longshoremen and Harbor Workers' Compensation Act ("LHWCA"). *Becker v. Tidewater, Inc., et al.*, 335 F.3d 376, 387 (5th Cir. 2003) (citing 33 U.S.C. §§ 905, 907(a)). The Jones Act and the LHWCA are mutually exclusive remedial compensation schemes. *Id.* at 386. Thus, if Plaintiff satisfies the criteria for being a seaman, then he is covered by the Jones Act. If he does not, then his recourse is limited to the LHWCA. *Id.*

plaintiff will qualify as a seaman only if he can show a connection to a vessel or an identifiable group of vessels under common ownership or control that is substantial in terms of both its duration and nature.  *See Chandris*, 515 U.S. at 368, 115 S.Ct. at 2190; *Papai*, 520 U.S. at 560, 117 S.Ct. at 1543; *Roberts*, 266 F.3d at 375-76.

The purpose of the substantial connection requirement is to delineate between "sea-based maritime employees" and land-based workers who have "only a transitory or sporadic connection to a vessel in navigation." *Chandris*, 515 U.S. at 368, 115 S.Ct. at 2190.  Thus, the substantial connection prong is a "status based" standard; accordingly, Jones Act coverage depends "not on the place where the injury is inflicted . . . but on the nature of the seaman's service, his status as a member of the vessel, and his relationship as such to the vessel and its operation in navigable waters." *Id.* at 360-61, 115 S.Ct. at 2185.  The Supreme Court clarified further that "the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of the vessels and the perils attendant thereon." *Id.* at 370, 115 S.Ct. at 2190 (citing *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 432 (5th Cir. 1984)).  Therefore, to qualify as a seaman under the Jones Act, it is vital that the employee's connection to a vessel or fleet of vessels is, in fact, substantial in both its duration (the temporal prong) *and* nature (the functional prong). *Id.* at 371, 115 S.Ct. at 2191 (emphasis added).

Concerning the temporal prong, the Fifth Circuit quantified the duration necessary to allow submission of the issue of seaman status to a jury.  A worker can satisfy the substantial duration component by demonstrating that 30 percent or more of his time is spent in the service of a particular vessel or fleet of vessels under common

ownership or control. *Roberts*, 266 F.3d at 375-76; *see also Nunez v. B. & B. Dredging, Inc.*, 288 F.3d 271, 277 (5th Cir. 2002) (holding that because the plaintiff spent only approximately 10 percent of his work time aboard a vessel in navigation, he did not qualify for seaman status as a matter of law). The Supreme Court has endorsed this calculus as an "appropriate rule of thumb." *Chandris*, at 371, 115 S.Ct. at 2191. In affirming the validity of the 30 percent rule, the *Chandris* Court explicitly confirmed that "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.* The 30 percent threshold also governs when an "identifiable group of vessels" in navigation is at issue, rather than just one particular vessel. *See Roberts*, 266 F.3d at 375 ("We have left no doubt that the 30 percent threshold for determining substantial temporal connection must be applied, regardless of whether one vessel or several are at issue."). Plaintiff's assertion of Jones Act seaman status focuses mainly on this temporal element.

As Plaintiff bears the burden to show seaman status, he must show that he fits within the framework set forth in *Chandris*. *See Becker*, 335 F.3d at 390. Plaintiff argues that he was assigned to work on vessels for 40 percent of his fifty-five total days in Defendant's employ. Defendant contends that Plaintiff did not spend 30 percent of his time on any particular vessel, or identifiable fleet of vessels under common ownership or control. (Rec. Doc. 18-1 at 7).

Defendant Blue Marlin is in the business of providing contract labor for short-term jobs on land, fixed-platforms, and vessels. Defendant asserts, and Plaintiff does not dispute, that the location and duration of each job is determined by the clients' needs rather than the employer's preference. During Plaintiff's five months of employment, he

8

was twice assigned to work on a fixed platform, for a total of thirty-three days, or 60 percent of his work time with Blue Marlin. Plaintiff also worked two independent assignments on separately owned vessels. His total work time aboard these two vessels was twenty-two days, or 40 percent of his total work time.

At the time of plaintiff's injury, he was working aboard the Canyon Horizon for the first time and had served 12 days of that assignment. Therefore, 22 percent of his time with Blue Marlin was on assignment aboard the Canyon Horizon. Plaintiff does not assert that he was ever permanently assigned to the Canyon Horizon, or any other particular vessel or company. Plaintiff also acknowledges that he did not work, nor did he expect to work, on the Canyon Horizon, or any other vessel, with regularity or continuity. *See Chandris*, 515 U.S. at 369, 115 S.Ct. at 2190 (explaining that seaman status requires that a claimant perform a significant part of his work aboard the vessel on which he was injured, with at least some degree of regularity and continuity); *see also Barrett*, 781 F.2d at 1073-74. Plaintiff asserts rather that he worked on two separately owned and controlled vessels, one for 22 percent of his total work time, the other for 18 percent of his total work time, which collectively exceed 30 percent.

The Fifth Circuit was the first to conclude that an employee could attain seaman status based on his connection to an identifiable group of vessels. *See Braniff v. Jackson Ave.-Gretna Ferry, Inc.*, 280 F.2d 523 (5th Cir. 1960). This concept, however, is not without limit. Seaman status will not be granted unless the employee's substantial connection is to an identifiable fleet of vessels *under common ownership or control*. *Chandris*, 515 U.S. 366, 115 S.Ct. at 2189; *Papai*, 520 U.S. at 560, 117 S.Ct. at 1543 (emphasis added). The Fifth Circuit emphatically reaffirmed this principle in stating

"when a group of vessels is at issue, a worker who aspires to seaman status must show at least 30 percent of his time was spent on vessels, every one of which was under his defendant-employer's common ownership or control." *Roberts*, 266 F.3d at 376. The Fifth Circuit has explicitly rejected the argument that an identifiable group of vessels can mean "any group of vessels an employee happens to work aboard." *See Campo v. Electro-Coal Trans. Corp.*, 970 F.2d 51, 52 (5th Cir. 1992) (citing *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067 (5th Cir. 1986)).

Plaintiff also contends that his limited work history precludes the Court from applying the 30 percent test in this case to commonly owned or operated vessels. (Rec. Doc. 19 at 3). This Court recognizes that *Chandris* qualified the 30 percent threshold as a "guideline" rather than a doctrine of rigid application, and that "departure from it will certainly be justified in appropriate cases." *Chandris*, 515 U.S at 371, 115 S.Ct. at 2191 (noting that Jones Act seaman status should not be denied to an individual who is injured shortly after reassignment from an employer's land-based headquarters to a classic seaman's job that involves a "regular and continuous commitment" to the function of a vessel). This, however, is not one of those cases. Since the substantial connection standard is often, as here, the determinative element of the seaman inquiry, it must be given "workable and practical confines." *Papai*, 520 U.S. at 558, 117 S.Ct. 1542. To ensure a workable rule with practical application, the Supreme Court pronounced that "[w]hen the inquiry further turns on whether the employee has a substantial connection to an identifiable group of vessels, common ownership or control is essential for this purpose." *Id*.

10

This Court also acknowledges that, had Plaintiff worked three or four additional days aboard the Canyon Horizon, his assertion of Jones Act seaman status may be strengthened. But even under such circumstances, the Court must look beyond Plaintiff's limited work history to the established business practices and procedures of the Defendant. *See Brown v. Trinity Catering et al.*, No. 06-5756, 2007 WL 4365384 (E.D. La. 2007) (finding that, when a plaintiff's employment history is brief, a court must consult the employer's patterns and practices to determine if the requisite connection is substantial in duration). Upon doing so, the undisputed nature of Blue Marlin's business model stifles the practicality of Plaintiff's request to apply a modified version of the 30 percent test. The Defendant has demonstrated, and Plaintiff concedes, that Blue Marlin provides temporary contract labor based solely on the needs of their clients. (Rec. Doc. 18-2 at 1-2). At no time did Plaintiff expect permanent or prolonged placement with any particular vessel or identifiable group of vessels under common ownership or control. During his tenure as an employee of Defendant, Plaintiff received four work assignments, two of which were on fixed platforms, two of which were on separately-owned and operated vessels. None of these assignments lasted longer than twenty-six days. Given these facts, none of which are in dispute, the Court does not perceive the instant case as one that justifies an exceptional departure from the 30 percent test.

In light of the multitude of precedent discrediting Plaintiff's argument, this Court finds that the only connection that a reasonable jury could identify among the vessels on which plaintiff worked is that each vessel owner had a separate contract with Defendant to obtain temporary, as-needed catering and cleaning staff. This is not sufficient to establish Jones Act seaman status under the group of vessels concept. Plaintiff's burden

11

to "set forth specific facts showing there is a genuine issue for trial" has not been discharged. FED.R. CIV. P. 56(e). "[W]here undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment . . . ." *Chandris*, 515 U.S. at 371, 115 S.Ct. at 2191.

C. *Maintenance and Cure*

Recovery of maintenance and cure benefits is contingent on an employee's status as a seaman. *See Chandris*, 515 U.S. at 380 (noting that "throughout the long history of the maritime law the right to maintenance and cure . . . ha[s] been confined to seaman."). Indeed, "the test for seaman status in maintenance and cure actions is the same as the inquiry for standing under the Jones Act." *Fanguy v. SMI Cos., Inc.*, No. 06-080, 2008 WL 4681376 at 2 (E.D.La. 2008) (quoting *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995); *see also Stumbaugh v. Am. Commercial Lines, LLC*, Slip Copy, 2009 WL 1458037 at 1 (E.D.La. 2009) (stating that a "plaintiff cannot recover for Jones Act negligence, maintenance and cure, or unseaworthiness if he is not a seaman."). As the Court's analysis in the previous section illustrates, Plaintiff is unable to demonstrate facts to suggest that he is entitled to Jones Act seaman status. As "[m]aintenance is a seaman's remedy," and Plaintiff is not a seaman, he is left without a claim under general maritime law.

D. *Unseaworthiness*

In its complaint, Plaintiff asserts a cause of action for unseaworthiness against the Defendant. Defendant objects pursuant to the fact that it neither owned nor controlled the Canyon Horizon at the time of Plaintiff's injury. The case law on this matter

12

demonstrates that only owners and operators may be liable for the unseaworthiness of a vessel. *See, e.g.*, *Guidry v. Continental Oil Co.*, 640 F.2d 523, 530 (5th Cir. 1981) (stating that the remedy of unseaworthiness traditionally is available only against a shipowner); *Baker v. Raymond Intern., Inc.*, 656 F.2d 173, 181 (5th Cir. 1981) (explaining that to be held liable for breaching the duty to provide a seaworthy vessel, the defendant "must be in the relationship of an owner or operator of the vessel.") (citing *Daniels v. Florida Power & Light Co.*, 317 F.2d 41, 43 (5th Cir. 1963); *Olsen v. E.H. Wachs, Inc.*, Slip Copy, 2009 WL 152512 at *5 (E.D.La. 2009) (clarifying that "[t]he appropriate defendant in an unseaworthiness claim is the person who had operational control of the ship at the time the condition was created or the accident occurred.") (citing 1 THOMAS J. SHOENBAUM, ADMIRALTY AND MARITIME LAW, § 6-25 (2d ed. 1994). Plaintiff has not disputed the Defendant's assertion that it did not own, operate, or control the Canyon Horizon at the time of injury, nor has Plaintiff challenged the validity of this principle or its authority. The Court finds this precedent controlling. As Defendant did not own, operate or control the Canyon Horizon, Plaintiff is unable to maintain a cause of action for unseaworthiness against Defendant.

Defendant is entitled to summary judgment on the issue of Plaintiff status as a Jones Act seaman. As a matter of law, Plaintiff lacks the requisite connection to a vessel in navigation, or to an identifiable group of such vessels, that is substantial in terms of both duration and nature. Thus, Plaintiff has no cause of action against Defendant pursuant to the Jones Act for negligence or maintenance and cure. Furthermore, as Defendant Blue Horizon does not own, operate, or control the Canyon Horizon,

Defendant's claim under general maritime law for the unseaworthiness of the vessel also fails.

Accordingly;

It is ORDERED that the motion for summary judgment filed by Blue Marlin Services of Acadiana, L.L.C.³ (Rec. Doc. 18) is GRANTED.

New Orleans, Louisiana, this 1st day of July, 2010

_____
Helen G. Berrigan
United States District Judge

---

³ The Court's grant of this motion for summary judgment does not extinguish Plaintiff's cause of action against Cal-Dive International, Inc., the owner and operator of the Canyon Horizon.

14